Filed 11/29/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ELISA LOPEZ, | B269345 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC513593) |
| v. | |
| GREGORY ROUTT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael P. Linfield, Judge. Affirmed.

Horvitz & Levy, Lisa Perrochet, Shane H. McKenzie; Bryan Cave, Donald L. Samuels, Thomas E. Nanney and Julie W. O'Dell for Defendant and Appellant.

LA SuperLawyers, Inc. and William W. Bloch; Klapach & Klapach, and Joseph S. Klapach for Plaintiff and Respondent.

## INTRODUCTION

Plaintiff Elisa Lopez sued her employer, the City of Beverly Hills (the City), and her supervisor, Gregory Routt, for harassment in violation of the California Fair Employment and Housing Act.[1] (FEHA) (Gov. Code, § 12900 et seq.)[2] A jury found in favor of the City and Routt on the harassment claim, and Routt moved for prevailing party attorney fees under FEHA's fee shifting provision. (§ 12965, subd. (b).) The trial court denied Routt's motion, concluding he had failed to establish Lopez's claim was frivolous, as is required for a prevailing defendant to obtain an attorney fee award under FEHA. (See *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115 (*Williams*); *Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1385-1386 (*Cummings*).)

Routt appeals from the postjudgment order denying his request for attorney fees. As his sole contention on appeal, Routt argues the frivolousness standard should not apply to a fee request by a supervising employee who has been sued as an individual defendant. Based on California Supreme Court precedent and the relevant legislative history, we conclude the same standard applies to an individual defendant's request for attorney fees under FEHA as applies to an employer defendant, and thus a fee award is only available in the discretion of a trial

---

[1]   Lopez also sued the City for racial discrimination and retaliation under FEHA. The jury found the City liable for retaliation, but ruled in favor of the City and against Lopez on the two remaining claims.

[2]   Statutory references are to the Government Code unless otherwise indicated.

court when the court finds that the plaintiff's claim was frivolous. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

The underlying facts are of limited relevance to the issue raised in this appeal.[3]

Lopez is an employee of the City's parking enforcement department. Routt was her supervisor. Lopez sued Routt and the City, alleging Routt subjected her to harassment based on her race and national origin in violation of FEHA. The City provided Routt's defense.

After a trial, the jury returned a verdict in favor of Routt and the City on Lopez's harassment claim. Routt filed a motion for prevailing party attorney fees under FEHA's fee shifting provision, section 12965. He sought $374,760.75, which amounted to 50 percent of the total fees incurred by the City in its representation of both the City and Routt.

The trial court denied Routt's motion. The court ruled that, "[u]nder the FEHA, a prevailing defendant may only recover fees upon a showing that the plaintiff's action was frivolous, unreasonable, or without foundation." The court found Routt failed to make the requisite showing.

---

[3]     In his opening brief, Routt had argued the trial court erred, even if the frivolousness standard applied, because Lopez's harassment claim against him was in fact frivolous. In his reply brief, Routt notified this court that he was abandoning this fact-based argument "in light of further review of the record, and in recognition of the strict standard of appellate review."

## DISCUSSION

1. *Standard of Review and Legal Principles; the* Christiansburg *Rule and the* Williams *Decision*

Routt contends the trial court erred when it ruled he could obtain attorney fees as a prevailing defendant under FEHA only upon a showing that Lopez's action was frivolous, unreasonable or without foundation. Although he acknowledges the frivolousness standard applies to fee motions brought by a prevailing employer defendant, he contends supervisors and other employees sued as individual defendants should not be subject to the same onerous standard. The issue presents a question of statutory interpretation subject to our de novo standard of review. (See *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1132-1133; see also *Williams, supra,* 61 Cal.4th at p. 100.)

With FEHA, the Legislature sought to "protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, . . . color, [or] national origin" and to "provide effective remedies that will eliminate these discriminatory practices." (§ 12920.) To accomplish this purpose, section 12965, subdivision (b) authorizes private actions to enforce FEHA's protections, and provides that "[i]n civil actions brought under this section, the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs." (§ 12965, subd. (b); see *Williams, supra,* 61 Cal.4th at p. 101.)

FEHA's fee shifting provision advances the statute's crucial objectives by " 'encourag[ing] litigation of claims that in the public interest merit litigation.' " (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 584 (*Flannery*).) As our Supreme Court explained in *Flannery*, " ' "privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions" ' [citation], and ' "[w]ithout some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." ' " (*Id.* at p. 583.)

Like FEHA, the federal employment discrimination statute, title VII of the 1964 Civil Rights Act (Title VII), provides that the trial court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs." (42 U.S.C. § 2000e–5(k).) In *Christiansburg Garment Co. v. E. E. O. C.* (1978) 434 U.S. 412 (*Christiansburg*), the United States Supreme Court interpreted this discretionary provision and concluded it created a different standard for awarding fees to prevailing defendants than to prevailing plaintiffs.

The high court recognized that Congress had chosen Title VII plaintiffs as instruments to vindicate federal policy against job discrimination, and further recognized that when a trial court awards attorney fees to a prevailing plaintiff, "it is awarding them against a violator of federal law." (*Christiansburg, supra*, 434 U.S. at p. 418.) The court emphasized that these "two strong equitable considerations counseling an attorney's fees award to a prevailing Title VII plaintiff . . . are wholly absent in the case of a prevailing Title VII defendant." (*Ibid.*) Moreover, Title VII's legislative history confirmed the fee shifting provision's purpose was to " 'make it easier for a plaintiff of limited means to bring a

5

meritorious suit' " while also protecting defendants from burdensome litigation without legal or factual basis. (*Id.* at p. 420.) Notwithstanding the statute's reference to a "prevailing party" (42 U.S.C. § 2000e–5(k)), the *Christiansburg* court held the statutory purpose mandated that a Title VII plaintiff "should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." (*Christiansburg,* at p. 422.)

The Supreme Court admonished trial courts to "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." (*Christiansburg, supra,* 434 U.S. at pp. 421-422.) To assess attorney's fees against plaintiffs "simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." (*Id.* at p. 422.)

In 1992, the Court of Appeal in *Cummings* adopted the *Christiansburg* frivolousness standard for attorney fee motions by prevailing FEHA defendants. The trial court in the underlying age discrimination suit granted summary judgment to the employer defendant and awarded it more than $60,000 in attorney fees. The appellate court reversed the award as an abuse of discretion under section 12965, subdivision (b). After quoting the fee shifting provision, the *Cummings* court observed that the "language, purpose and intent of California and federal anti-discrimination acts are virtually identical." (*Cummings, supra,* 11 Cal.App.4th at p. 1386.) Drawing on established precedent "adopt[ing] the methods and principles developed by federal courts in employment discrimination claims arising under title VII," the appellate court adopted the reasoning of the *Christiansburg* decision and held that the "standard a trial court must use in exercising its discretion in awarding fees and costs to a prevailing defendant [under FEHA] was set forth in the [United States] Supreme Court's decision in *Christiansburg*." (*Cummings,* at pp. 1386, 1387.)

In 2015, the California Supreme Court approved the *Cummings* court's interpretation of FEHA's fee shifting provision, holding, "the trial court's discretion is bounded by the rule of *Christiansburg*; an unsuccessful FEHA plaintiff should not be ordered to pay the defendant's fees or costs unless the plaintiff brought or continued litigating the action without an objective basis for believing it had potential merit." (*Williams, supra,*

7

61 Cal.4th at pp. 99-100.)[4]  Beginning with the text of the statute, the Supreme Court in *Williams* observed that, "[o]n its face, the language of Government Code section 12965(b) does not distinguish between awards to FEHA plaintiffs and to FEHA defendants:  It simply provides trial court discretion in making fee and cost awards to the prevailing 'party.' " (*Williams,* at p. 109.)  Nevertheless, the court concluded "the legislative history of the bill by which this language entered our law, and the underlying policy distinctions reflected in that history, persuade us the Legislature intended trial courts to use the asymmetrical standard of *Christiansburg* as to both fees and costs." (*Williams,* at p. 109.)

---

[4]      As the *Williams* court noted, numerous appellate decisions had followed *Cummings* in applying the *Christiansburg* rule to attorney fee motions by prevailing FEHA defendants.  (*Williams, supra,* 61 Cal.4th at p. 103; see, e.g., *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 419-420 (*Leek*); *Young v. Exxon Mobil Corp.* (2008) 168 Cal.App.4th 1467, 1475 (*Young*); *Mangano v. Verity, Inc.* (2008) 167 Cal.App.4th 944, 948-949; *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859, 874 ["Any other standard would have the disastrous effect of closing the courtroom door to plaintiffs who have meritorious claims but who dare not risk the financial ruin caused by an award of attorney fees if they ultimately do not succeed"]; see also *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985 [observing, "California courts have adopted" the *Christiansburg* rule for attorney fee awards in FEHA cases].)

8

Addressing the statute's legislative history, the *Williams* court recounted that, in 1978, when the bill for the predecessor to FEHA's fee shifting provision was under consideration, the proposed legislation would have granted "the trial court discretion to award 'the prevailing *plaintiff* reasonable attorney fees and costs.' " (*Williams, supra,* 61 Cal.4th at p. 110, italics added.) A committee analysis noted the bill "differed from federal law under Title VII in one respect: 'Unlike the proposed provision, which limits payment of fees and costs to only the prevailing plaintiff, federal law allows fees and costs to be awarded to a prevailing defendant if there is a showing that individuals bringing suit acted in bad faith, frivolously, or maliciously.' [Citation.] The analysis went on to ask, rhetorically, 'Would it be more equitable to allow the prevailing party, rather than just the prevailing plaintiff, to be awarded attorneys fees and costs?' " (*Ibid*.) A week later, the Assembly amended the bill to change " 'plaintiff' " to " 'party,' " and a week after that, the United States Supreme Court filed *Christiansburg*, which approved the restrictive standard for fee awards to

prevailing Title VII defendants.[5]  (*Williams,* at p. 110.)  By the time the bill was passed by the Legislature and signed into law, *Christiansburg* had been on the books for several months. *(Williams,* at p. 111.)

The *Williams* court observed that, "[i]n amending California's employment antidiscrimination law to authorize discretionary awards of attorney fees and costs, our Legislature, like Congress before it, sought 'to encourage persons injured by discrimination to seek judicial relief.' "  (*Williams, supra,* 61 Cal.4th at p. 112.)  In view of that purpose and the accompanying legislative history, our Supreme Court found the

---

[5]     The committee analysis for the Assembly bill had referred to lower federal court decisions preceding *Christiansburg* that had imposed the bad faith, frivolous or malicious standard in assessing whether a defendant was entitled to attorney fees under Title VII.  (*Williams, supra,* 61 Cal.4th at p. 111, citing *Carrion v. Yeshiva University* (2nd Cir. 1976) 535 F.2d 722, 727 [a prevailing Title VII defendant should be awarded fees "only where the action brought is found to be unreasonable, frivolous, meritless or vexatious"]; *United States Steel Corporation v. United States* (3rd Cir. 1975) 519 F.2d 359, 363 [upholding district court denial of fees to prevailing Title VII defendant on basis that action was not " 'unfounded, meritless, frivolous or vexatiously brought' "].)  "The *Christiansburg* court approved 'the concept embodied in the language adopted by these two Courts of Appeals,' qualifying that language 'only by pointing out that the term "meritless" is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case, and that the term "vexatious" in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him.' "  (*Williams,* at p. 111, quoting *Christiansburg, supra,* 434 U.S. at p. 421.)

inference "inescapable . . . that the Legislature, in giving the trial courts discretion to award fees and costs to prevailing parties in employment discrimination suits, intended that discretion to be bounded by the *Christiansburg* rule, or something very close to it." (*Williams,* at p. 112.)  Thus, under FEHA's fee shifting provision, the court held:  "[A] prevailing *plaintiff* should ordinarily receive his or her costs and attorney fees unless special circumstances would render such an award unjust.  [Citation.]  A prevailing *defendant*, however, should not be awarded fees and costs unless the court finds the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." (*Id.* at p. 115.)

　　With this background in place, we turn to Routt's contention in this appeal.

　　2.　　*The* Christiansburg *Rule Applies to Routt's Request for Attorney Fees*

　　Routt argues *Williams* and other California appellate decisions applying the *Christiansburg* rule are inapposite.  He maintains these cases considered only the standard that should govern an *employer* defendant's request for attorney fees—not the standard that should apply when an *individual* defendant prevails on a workplace harassment claim under FEHA.  He contends that when an *individual* defendant in a FEHA harassment case prevails, that defendant should be subject to the same fee-shifting rules as a prevailing plaintiff, and thus should be entitled to have a court exercise its discretion to award attorney fees, whether or not the court ultimately deems the plaintiff's claims frivolous.

11

We reject Routt's contention that the *Christiansburg* rule does not apply to his request for attorney fees because of his status as an individual defendant.  First and foremost, *Williams* broadly held that the *Christiansburg* rule applies to attorney fee motions brought by a "prevailing defendant," and nothing about this decision suggests that its holding should be limited to the facts of that case, which happened to concern an attorney fees motion by an employer defendant.  Tellingly, no court has seen fit to draw the distinction urged by Routt.

Further, our interpretation of FEHA's discretionary fee shifting provision "must reflect the legislative intent as to how that discretion is to be bounded."  (*Williams, supra,* 61 Cal.4th at p. 114.)  The equitable considerations that support the asymmetrical application of that provision are no different as applied to an employer versus an individual defendant, leading to the inescapable conclusion that no exception to the *Christiansburg* rule is warranted for prevailing individual defendants.

Breaking with the traditional "American rule" under which the prevailing party generally is not entitled to receive attorney fees (Code Civ. Proc., § 1021), the Legislature created the FEHA fee shifting standard to encourage plaintiffs to serve as instruments for vindicating the state's policy against discrimination, retaliation, and harassment in the workplace.  This equitable consideration simply does not come into play in the case of a prevailing FEHA defendant, no matter whether the defendant is an entity or an individual employee.  The FEHA fee provision is designed to encourage plaintiffs of limited means to bring a meritorious suit; assessing attorney fees *against* such plaintiffs in non-frivolous cases merely because they do not

ultimately prevail would have a major chilling effect on potential plaintiffs and thereby undermine the Legislature's intent to promote the enforcement of FEHA.

Routt argues, however, that individual defendants who prevail in a FEHA harassment suit should be considered on the same footing as prevailing plaintiffs in seeking their attorney fees because "there is less impetus for encouraging" plaintiffs to file harassment suits against individual employee defendants, "given that plaintiffs may sue the employer for the same wrong" under the principle of vicarious liability.  The actions taken by our Legislature directly contradict this contention.

The Legislature has unequivocally expressed its intention to ensure that personal liability lies under FEHA against individual employees for harassment.  In 1999, in *Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132 (*Carrisales*), our Supreme Court held that former section 12940, subdivision (h)(1) did *not* impose personal liability on nonsupervisory coworkers for harassment, and liability for such harassment extended only to the employer.[6]  (*Carrisales,* at p. 1140.)  The court stated, "If the Legislature believes it necessary or desirable

_____

[6]     When the court decided *Carrisales*, former section 12940, subdivision (h)(1) provided:  "It shall be an unlawful employment practice . . . :  [¶] . . . [¶]  For an employer . . . or any other person, because of . . . sex, . . . to harass an employee [or] applicant. . . . Harassment of an employee [or] applicant . . . by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.  An entity shall take all reasonable steps to prevent harassment from occurring."  (See *Carrisales, supra,* 21 Cal.4th at p. 1135.)

to impose individual liability on coworkers, it can do so." (*Ibid.*) The Legislature responded the following year by amending FEHA to add section 12940, subdivision (j)(3), which provides: "An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action." (See Stats. 2000, ch. 1049, §§ 7.5, 11; *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1164, fn. 3 (*Jones*) [discussing legislative abrogation of *Carrisales*]; *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471.) "This is clear language imposing personal liability on all employees for their own harassing actions." (*Jones,* at p. 1162.)

By this amendment, the Legislature evidenced its intention to encourage plaintiffs to bring harassment claims against coworkers where they have a nonfrivolous basis to do so. Further, the Legislature impliedly rejected the court's reasoning in *Carrisales*—resurrected by Routt in this appeal—that harassment suits against coworkers need not be encouraged because redress may instead be sought from the employer in most cases. (*Carrisales, supra,* 21 Cal.4th at p. 1136.) The *Carrisales* court noted that, under then-existing law, an employee who has been harassed by a coworker had a right to sue his or her employer where the employer failed to take immediate and appropriate corrective action after learning of the harassing conduct, and only in the narrow circumstance where the employer *did* in fact act immediately and respond appropriately would a claim against the employer be foreclosed. The court also found that the plaintiff's argument that employers could not be

14

relied upon to provide effective deterrence against harassment by coworkers was an argument "best directed to the Legislature." (*Id.* at pp. 1139-1140.)

In responding to *Carrisales* by amending the harassment provision, the Legislature plainly concluded it *was necessary* to make individual employees liable for harassment under FEHA to ensure a victim's full recovery and to deter harassment between coworkers. It would be absurd to conclude the Legislature amended FEHA with these goals in mind, yet intended to discourage plaintiffs from bringing such claims by depriving them of the asymmetrical attorney fee standard that the *Cummings* court introduced into FEHA jurisprudence nearly a decade earlier to work in tandem with the other FEHA provisions to accomplish the state's policy objectives. (See *Cummings, supra,* 11 Cal.App.4th at p. 1387 [applying *Christiansburg* rule to FEHA fee shifting provision in 1992]; Stats. 2000, ch. 1049, §§ 7.5, 11 [extending FEHA liability to individual defendants, effective January 1, 2001]; see also *Flannery, supra,* 26 Cal.4th at p. 578 [statutory language is not considered in isolation; rather, the court must "look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision' "]); *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 642–643 ["The Legislature is presumed to have knowledge of existing judicial decisions when it enacts and amends legislation. When the Legislature amends a statute that has been the subject of judicial construction, changing it only in part, the presumption

15

is that the Legislature intended to leave the law unchanged in the aspects not amended."].)[7]

To support his contention that "countervailing public policies" militate in favor of treating fee requests by prevailing individual employee defendants differently from requests by employer defendants, Routt relies on the discussion in *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55 (*Janken*), regarding the rationales for not imposing personal liability on supervisory employees. (See *id.* at pp. 74-75, italics added ["Adding individual supervisors personally as defendants adds mostly an *in terrorem* quality to the litigation, threatening individual supervisory employees with the spectre of financial ruin for themselves and their families and correspondingly enhancing a plaintiff's possibility of extracting a settlement on a basis other than the merits."].) But Routt fails to acknowledge that this discussion in *Jankens* was limited to FEHA *discrimination* claims. In fact, the *Jankens* court went to great lengths to explain why personal liability was appropriate for individual employee defendants who engaged in harassment, but not for employees engaged in discrimination. (*Id.* at pp. 62-65.)

Indeed, for principled reasons, FEHA imposes personal liability on individual employees for harassment (see § 12940, subd. (j)(3); *Jones, supra,* 42 Cal.4th at pp. 1164-1165), but does not impose personal liability on individual employees for employment discrimination (§ 12940, subd. (a); *Reno v. Baird* (1998) 18 Cal.4th 640, 663 (*Reno*)) or retaliation (§ 12940, subd.

---

[7] In so amending FEHA, our Legislature clarified its intent to depart from Title VII, under which employees may not be sued in their individual capacities as to any type of claim. (See *Reno, supra,* 18 Cal.4th at p. 663.)

(h); *Jones,* at p. 1173.) " '[T]he Legislature's differential treatment of harassment and discrimination is based on the fundamental distinction between harassment as a type of conduct not necessary to a supervisor's job performance, and business or personnel management decisions – which might later be considered discriminatory – as inherently necessary to performance of a supervisor's job.' [Citation.]" (*Reno,* at p. 645, quoting *Janken, supra,* 46 Cal.App.4th at pp. 62-63.) " '[H]arassment consists of a type of conduct not necessary for performance of a supervisory job. Instead, harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.' " (*Reno,* at pp. 645-646.) "Behavior that gives rise to a discrimination claim, on the other hand, is often indistinguishable from performing one's job duties." (*Id.* at p. 657.) Thus, "[w]hatever similarities there may be between [discrimination and harassment], the *employer* ultimately does the former; coworkers and supervisors do the latter." (*Ibid.*) Acts by a supervisor that may form the basis for a retaliation claim similarly are acts that are within the scope of necessary job performance. (*Jones,* at p. 1167.)

In view of these fundamental differences between harassment, on the one hand, and discrimination and retaliation, on the other, we do not find persuasive Routt's recitation of the public policy rationales that have been articulated for not imposing liability on individual coworkers in FEHA discrimination cases. Further, given that harassment claims are fundamentally different from discrimination and retaliation claims in terms of whether individual coworkers should be held personally liable, we also disagree with Routt's contention that

17

the Legislature could not have intended to encourage harassment claims against individual defendants by subjecting them to *Christiansburg's* asymmetrical frivolousness standard.

As for Routt's arguments regarding the burdens on individual defendants in defending against unmeritorious FEHA harassment claims, the *Christiansburg* frivolousness standard ensures that defendants may recover attorney fees and costs when dragged into court to defend a FEHA suit with no legal or factual basis. Moreover, even if a harassment suit is not frivolous, but the individual employee defendant prevails in the suit, that employee has potential avenues by which to seek reimbursement from his employer of his attorney fees and costs. If the employee works for a public entity, that entity is obligated (with limited exceptions) to "provide for the defense of any civil action or proceeding brought against him . . . on account of an act or omission in the scope of his employment." (§ 995; *Lexin v. City of San Diego* (2013) 222 Cal.App.4th 662, 669). If the employee works for a private entity, Labor Code section 2802 requires that private employer to indemnify the employee for all expenses and losses, including attorney fees, incurred "in direct consequence of the discharge of his duties." (Labor Code, § 2802, subds. (a), (c). [8]

---

[8] "The test for recovery [from an employer] under section 2802 is whether the conduct defended against was within the course and scope of employment." (*Jacobus v. Krambo Corp.* (2000) 78 Cal.App.4th 1096, 1101 (*Jacobus*).) In *Jacobus*, an employee was sued for sexual harassment but successfully defended against that claim, and thus sought indemnification from his employer for his attorney fees under Labor Code section 2802. The court found that the employee's conduct, which included showing explicit sexual stories to his co-worker plaintiff, did not amount to sexual harassment, and instead could be

Accordingly, individual employee defendants who prevail on a FEHA harassment suit are not left without a means of recovering attorney fees and costs they may have incurred to defend themselves.

We affirm the trial court's denial of Routt's motion for attorney fees.[9]

characterized as "part of the social intercourse that occasionally occurs in modern office settings." (*Jacobus,* at p. 1103.) Thus, the court held the employer was obligated under Labor Code section 2802 to either defend the employee in the litigation or to "pay the defense costs of the exonerated employee." (*Jacobus,* at p. 1104.)

[9] Lopez filed a motion for appellate attorney fees as sanctions pursuant to Code of Civil Procedure section 907 and California Rules of Court, rule 8.276(a)(1). She argues Routt's "legal arguments are indisputably without merit," citing our Supreme Court's holding in *Williams* and decisions by the appellate courts in *Leek* and *Young*, which both involved claims by prevailing individual defendants for fee awards under FEHA. (See *Leek, supra,* 194 Cal.App.4th 399; *Young, supra,* 168 Cal.App.4th 1467.) Neither *Leek* nor *Young* expressly addressed the legal question whether the *Christiansburg* rule should apply to individual employee defendants. While we conclude the trial court correctly applied the standard articulated in *Williams* to Routt's fee motion, we agree with Routt that no binding precedent has directly addressed the legal issue presented by his appeal. Lopez's motion for sanctions is denied.

We also deny Routt's request for judicial notice of the appellate briefs in *Leek* and *Young*.

## DISPOSITION

The order is affirmed.  Plaintiff, Elisa Lopez, is entitled to her costs.

## CERTIFIED FOR PUBLICATION

STONE, J.*

We concur:

EDMON, P. J.

LAVIN, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.